NOT FOR PUBLICATION                                                                         (Document No. 36)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| RONALD HEMPHILL, | : |
| Plaintiff, | : Civ. No. 12-927 (RBK/KMW) |
| v. | : **OPINION** |
| IBE, DONNA ZICKEFOOSE, and MEDICAL STAFF AT FORT DIX FEDERAL CORRECTIONAL INST., | : |
| Defendants, | : |

**KUGLER**, United States District Judge:

In this case, Plaintiff Ronald Hemphill ("Plaintiff"), proceeding *pro se*, claims that Defendants Chigozie Ibe, M.D. and Donna Zickefoose (together, the "Defendants") failed to provide him with proper medical attention while he was incarcerated at Federal Correctional Institution, Fort Dix ("FCI Fort Dix").

Currently before the Court is Defendants' motion for summary judgment. (Doc. No. 36.) For the reasons stated herein, the Court will **GRANT** Defendants' motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former federal inmate who was incarcerated at FCI Fort Dix in connection with his 120-month sentence for possession with intent to distribute more than 50 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Def.'s Statement of Undisputed Material Facts ("Defs.' SUMF") ¶¶ 1-2; see also Doc. No. 34 (noting that mail sent to Plaintiff containing a Court Order was returned as undeliverable and that Plaintiff was

released from prison on December 18, 2013, according to the Federal Bureau of Prisons' website).)

In his Complaint, Plaintiff alleges that on April 9, 2010, he was "assaulted by at least 13 inmates" and repeatedly "hit, punched, and kicked in [his] eye, head, and ribs."[1] (Compl. at 4.) After this altercation, Plaintiff was placed in a special housing unit ("SHU") and was not medically examined until he complained of pain in his eye and ribs on April 12, 2010.[2] (Id.)

Plaintiff's initial injury assessment was conducted by Federal Bureau of Prisons ("BOP") paramedic Andrew Ackley ("Ackley"). (Defs.' SUMF ¶ 5 (citing Declaration of Abigail Lopez de LaSalle, M.D. ("LaSalle Decl.") ¶ 5 & Ex. 1 p. 4).) Plaintiff reported pain in his right eye and on the right side of his chest, and Ackley noted that Plaintiff's eye looked red and irritated. (LaSalle Decl. ¶ 5 & Ex. 1 p. 4.) At that time, Plaintiff reported no vision problems and was given Tylenol for his pain. (Id. & Ex. 1 p. 5.) Plaintiff was advised to let officers know if there were any changes in his condition. (Id.)

On April 20, 2010, while Plaintiff was still housed in SHU, Defendant Ibe evaluated Plaintiff based on his complaint that he did not receive pain medication for his rib pain. (Id. ¶ 6 & Ex. 1 p. 7.) Plaintiff also claimed that he needed his right eye to be examined due to his lazy eye and other eye problems throughout the years.[3] (Id.) In examining Plaintiff's eye, Defendant Ibe noted some white film running across Plaintiff's iris and pupil, but concluded that there was no sign of recent injury. (Id.) During the evaluation, Plaintiff accused Defendant Ibe of being a

---

[1] The medical records provided by the Defendants list the date of the injury as April 10, 2010, at 5:00 a.m. (LaSalle Decl. ¶ 5.) This distinction is of no importance.

[2] Again, medical records provided by the Defendants show that Plaintiff received an injury assessment on April 10, 2010, at 8:20 a.m. in SHU. (LaSalle Decl. ¶ 5, Ex. 1 at 4.) This distinction is of no importance.

[3] A note made by a Fort Dix physician on December 29, 2009, confirmed Plaintiff's self-reported past eye issues. (See LaSalle Decl. ¶ 7; Defs.' SUMF ¶ 4 ("Specifically, during his Chronic Care Clinic evaluation on that date, Plaintiff reported that his right eye pupil was deformed due to a childhood injury resulting in loss of vision.").)

member of the medical staff with whom he had previously spoke and further stated: "no one wants (sic) to help [me] for two weeks now"; however, this happened to be Defendant Ibe's first encounter with Plaintiff. (Id.) Plaintiff then asked for two Tylenol tablets for his pain, but instead received a seven-day prescription of Ibuprofen 800 mg. (Id.) Defendant Ibe also ordered an x-ray of Plaintiff's ribs and an optometry examination. (Id. & Ex. 1 p. 8.)

Following Plaintiff's evaluation on April 20, 2010, he was not seen again by Defendant Ibe or by any other medical staff members at FCI Fort Dix. (Id. ¶ 8.) Records show that Plaintiff was transferred from FCI Fort Dix on July 7, 2010, prior to any optometry examination. (Id.) That same day, July 7, 2010, Plaintiff was admitted to New York Downtown Hospital ("NYDH"). (Id.)

Upon admission to NYDH, Plaintiff reported that he had "right eye tearing since April 2010 when he was involved in an altercation and was struck in the right eye." (Compl. at 7-8; see also Doc. No. 31, Declaration of Ronald Hemphill ("Hemphill Decl.") p. 4.) He also reported that there was "something white" in his right eye, but that his vision had always been poor since childhood and there was no change in his vision since. (Id.) Plaintiff added that he had not experienced "flashes, floaters, [or] veils," nor was he experiencing any pain. (Id.)

Plaintiff's subsequent medical and inmate history records indicate that after he was transferred out of FCI Fort Dix, he was incarcerated at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Book"). (See Hemphill Decl. pp. 6-11 (documents indicating that Plaintiff was examined at Eye Care for the Adirondacks on August 8, 2013, and providing details of examination to Dawn Marini, M.D., Clinical Director, FCI Ray Brook); Defs.' Mot. for Summ. J., Declaration of Tara Moran ("Moran Decl."), Ex. 2 (attaching inmate history which notes that Plaintiff was transferred from "FTD" (i.e., FCI Fort Dix) to "RBK" (i.e., FCI Ray

3

Brook).)  It appears that while Plaintiff was incarcerated at FCI Ray Brook, he received further treatment at Eye Care for the Adirondacks including a vitrectomy and lensectomy, which were performed on October 21, 2010.  (Hemphill Decl. ¶¶ 6, 8, 11.)

On September 28, 2010, while incarcerated at FCI Ray Brook, Plaintiff filed a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (the "FTCA"), using Standard Form 95, Claim for Damage, Injury, or Death.  On this form, Plaintiff claimed that he was owed compensatory damages in the amount of $8,700 due to the negligence of the medical staff at FCI Fort Dix.  (Defs.' SUMF ¶ 16 (citing Compl. pp. 11-14).)

Plaintiff's claim was received by the BOP Northeast Regional Office on October 4, 2010, and considered for settlement as provided by the FTCA.  (Id.)  While the Regional Counsel declined to offer Plaintiff a settlement, informing him of this fact in a letter dated April 1, 2011, he did advise Plaintiff that if he was dissatisfied with the BOP's decision, he could bring an action against the United States in an appropriate United States District Court within six (6) months of the date of the letter.  (Id.)

It appears that Plaintiff was transferred out of FCI Ray Brook on January 6, 2011, and held in several different facilities, including the Federal Correctional Institution in Phoenix and the Federal Transfer Center in Oklahoma City, before he was ultimately incarcerated at the United States Penitentiary in Leavenworth, Kansas.  (Moran Decl. Ex. 2.)

On September 19, 2011, Plaintiff filed suit in the United States District Court for the Eastern District of Pennsylvania.  Defendants' subsequent motion to transfer Plaintiff's case to this District was granted on February 14, 2012.  (Doc. No. 9.)

Defendants filed a motion to dismiss or in the alternative for partial summary judgment on March 7, 2013.  (Doc. No. 27.)  On October 30, 2013, the Court ordered that it would

4

construe Defendants' motion as one under Fed. R. Civ. P. 56, and ordered Plaintiff to respond within ten (10) days addressing Defendants' assertions of fact by filing an affidavit or declaration along with any supporting documents. Defendants were given leave to reinstate their motion by letter request within ten (10) days of the date that Plaintiff filed his response. Plaintiff filed a declaration in support of his case, (see Hemphill Decl. supra), and Defendants' motion was subsequently reinstated. The Court now turns to the parties' arguments.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to

5

survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.     DISCUSSION

Defendants argue, inter alia, that summary judgment is appropriate because Plaintiff failed to exhaust available administrative remedies to the extent he seeks to assert a constitutional claim against Defendants. Further, to the extent Plaintiff seeks to assert a claim against Defendants under the FTCA, that claim is improperly plead.[4] (Defs.' Br. in Support of Mot. for Summ. J. ("Defs.' Br.") 4-5.)  Essentially, because Plaintiff has now brought suit against Defendants Ibe and Zickefoose, rather than the United States as instructed by the Regional Counsel in his April 1, 2011, letter, Defendants see two potential causes of action at issue.

---

[4] Defendants also argue that Defendant Zickefoose should be dismissed from this action for lack of personal involvement, Plaintiff does not allege deliberate indifference to a serious medical need, and Defendants are entitled to qualified immunity. (Defs.' Br. 8-16.)

6

First, Defendants point to page five of Plaintiff's Complaint where he alleges that while he was incarcerated at FCI Fort Dix, he went 87 days without a proper examination. (Id.) They argue that this can be construed as a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Defs.' Br. 5.) Thus, they contend that to the extent that Plaintiff is now attempting to pursue a Bivens claim against them, the Complaint must be dismissed for failure to exhaust administrative remedies.

Second, Defendants point to Plaintiff's Claim for Damage, Injury, or Death, which purported to assert a tort claim under the FTCA for negligent medical care during his incarceration at FCI Fort Dix. Defendants contend that to the extent the Complaint is construed as asserting a claim under the FTCA, that claim can only be brought against the United States and thus they are entitled to summary judgment on this ground as well.

Plaintiff's only relevant response is "[y]ou do not have to exhaust your remedies to file a tort claim." (Hemphill Decl. ¶ 5.)

The Court finds that Defendants have the better of the argument.

A. FTCA Claim

As stated above, Plaintiff filed an administrative tort claim on September 28, 2010, claiming that he was owed compensatory damages in the amount of $8,700 due to the negligence of the medical staff at FCI Fort Dix. (Defs.' SUMF ¶ 16 (citing Compl. pp. 11-14).) However, rather than sue the United States as instructed by the Regional Counsel, Plaintiff filed suit against two individuals, Defendants Ibe and Zickefoose.

It is well settled that the only party who may be sued under the FTCA is the United States. Accordingly, Plaintiff's FTCA claim against Defendants Ibe and Zickefoose is improper and the Court will grant Defendants' motion on this ground. See e.g., CNA v. United States, 535

F.3d 132, 138 n.2 (3d Cir. 2008); Logan v. United States, No. 11-7235, 2012 WL 2979041, at *2 (D.N.J. July 20, 2012); Kennedy v. U.S. Postal Service, 145 F.3d 1077, 1078 (9th Cir. 1998).

    B.  Eighth Amendment Claim

Although Defendants characterize Plaintiff's Complaint as alleging a constitutional violation, Plaintiff's own filings characterize his claim as one sounding in tort. (See Hemphill Decl. ¶ 5.) However, even if Plaintiff intended to pursue a constitutional claim against Defendants Ibe and Zickefoose, that claim would also fail.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Simply, the exhaustion of administrative remedies is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions. Id.; see also Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

"[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted). Further, "a prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process." Pinet v. Zickefoose, No. 10-2347, 2013 WL 6734241, at *9 (D.N.J. Dec. 19, 2013) (citing Booth v. Churner, 532 U.S. 731 (2001)). "Exhaustion is a precondition for bringing suit and, as such, it is

a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'"  Id. (quoting Small v. Camden County, 728 F.3d 265, 270 (3d Cir.2013) (internal quotation marks omitted)).

In determining whether a prisoner has exhausted his administrative remedies, the Court looks to the administration's—here the BOP's—applicable procedure and rules.  See Jones, 549 U.S. at 218 (stating that the procedural rules for exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a) ] to 'properly exhaust'"); see also 28 C.F.R. §§ 542 et seq. (setting forth the BOP's Administrative Remedy Program, which allows "inmates to seek formal review of an issue relating to any aspect of his/her own confinement").

The Bureau of Prisons Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  Per this program, an inmate must initially attempt to informally resolve his or her issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.

An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days after the day the Regional Director signed the

response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  The General Counsel must respond within 40 calendar days after an appeal is logged into the Administrative Remedy Index as received; this response time may be extended, once, for 20 additional days.  28 C.F.R. § 542.18.  If a response is not received by the inmate within the time allotted for reply, including extension, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Here, in reviewing the documents and declarations submitted by Defendants in support of their motion, along with Plaintiff's filing in opposition, it is clear that during Plaintiff's incarceration at FCI Fort Dix, he did not seek any administrative remedy pertaining to a constitutional claim for deliberate indifference to a serious medical need.  (See Moran Decl. ¶ 4 (stating that it was not until Plaintiff was transferred out of FCI Fort Dix that he filed a BP-9 form with the Warden of FCI Raybrook, however, Plaintiff did not file any administrative grievance beyond the BP-9 stage since his transfer).)  Indeed, Plaintiff's filing of Standard Form SF-95, along with his declaration that his claim sounded in tort, demonstrate that all along, Plaintiff's intent was to seek relief under the FTCA for his injury allegedly caused by the FCI Fort Dix medical staff's negligence.  See 28 C.F.R. § 14.2(a) ("For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident") (emphasis added); (Hemphill Decl. ¶ 5).

Since the undisputed record shows that Plaintiff did not intend to pursue a constitutional claim—and, even if he had, he neglected to comply with BOP's deadlines and other procedural

rules for exhausting a constitutional claim for deliberate indifference to a serious medical need—Defendants are entitled to summary judgment and this case will be closed.  See Rodriguez v. U.S. Dept. of Justice, 325 F. App'x 111, 113 (3d Cir. 2009) (affirming a district court's grant of summary judgment where prisoner plaintiff failed to exhaust administrative remedies.)

## IV.  CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment will be **GRANTED**.  An appropriate order will issue today.


Dated:  7/31/2014                                             s/ Robert B. Kugler
                                                                                                                          ROBERT B. KUGLER
                                                                                                                          United States District Judge